**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **JAKEITH TERRELL CAMPBELL,** | : | |
| **#12788-003,** | : | |
| | : | |
| **Petitioner,** | : | |
| | : | **CRIMINAL NO. 12-00161-CG-B-2** |
| **vs.** | : | **CIVIL ACTION NO. 14-00591-CG** |
| | : | |
| **UNITED STATES OF AMERICA,** | : | |
| | : | |
| **Respondent.** | : | |

**REPORT AND RECOMMENDATION**

Pending before the Court is Petitioner Jakeith Terrell Campbell's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 (Doc. 164), and the Government's Response in Opposition. (Doc. 173). This action was referred to the undersigned Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 8(b) of the Rules Governing Section 2255 Cases and is now ready for consideration.[1] Having carefully reviewed the record, the undersigned finds that no evidentiary hearing is necessary for the disposition of this matter.[2] Upon consideration, the undersigned hereby recommends

---

[1] The Honorable Senior United States District Judge Callie V.S. Granade presided over the plea hearing and sentencing in this action. The undersigned has reviewed Campbell's motion and all other relevant documents in the Court's file and has fully familiarized herself with the proceedings before Judge Grenade.

[2] A district court is not required to hold an evidentiary hearing every time a § 2255 petitioner simply asserts a claim of ineffective assistance of counsel. Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989) ("A hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations. Nor is a hearing required when the

that Campbell's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 be **DENIED**, that this action be **DISMISSED**, and that judgment be entered in favor of Respondent, the United States of America, and against Petitioner, Jakeith Terrell Campbell.  The undersigned also recommends that should Campbell file a certificate of appealability, it should be denied as he is not entitled to appeal *in forma pauperis*.

## I.  PROCEDURAL BACKGROUND

Campbell was charged, along with several other defendants, in a multiple-count indictment that included various drug and firearm charges. (Doc. 1). Campbell entered a counseled written plea agreement wherein he agreed to enter a guilty plea to Count 1, conspiracy to unlawfully possess with intent to distribute crack cocaine; and to Counts 4 and 7, both of which charged using, carrying and possessing a firearm in furtherance of, and in connection with, a drug trafficking felony. (Doc. 80 at 1). The plea agreement included a waiver which provides that "the defendant knowingly and voluntarily waives the right to file any direct appeal or any collateral attack, including a motion to vacate, set aside or correct sentence under 28 U.S.C. § 2255" except in cases of 1) "a sentence imposed in excess of the statutory maximum", 2) "a sentence which constitutes an upward

---

petitioner's allegations are affirmatively contradicted by the record.") (citation omitted).

departure or variance from the advisory guideline range" or 3) a claim of "ineffective assistance of counsel".[3] (Id. at 10-11).

During the change of plea hearing conducted on December 18, 2012, Campbell testified, under oath, that he possessed an eighth grade education, and could not read well, but his attorney had read the plea agreement to him, and had discussed it with him. (Doc. 17 at 2-3). Campbell also testified that he received a copy of the indictment, understood the charges against him, discussed the charges with his attorney, and was fully satisfied with his attorney's advice and representation. (Id. at 2-3). Additionally, Campbell testified that he had not recently been treated for any mental illnesses, and was not

---

[3] The plea agreement set forth the following penalty provisions:
      Count 1:
a.  10 years to life imprisonment;
b.  A fine not to exceed $10,000,000;
c.  A term of supervised release of 5 years, which would follow any term of imprisonment.  If the defendant violates the conditions of supervised release, he could be imprisoned for the entire term of supervised release; d. A mandatory special assessment of $100;
e.  Forfeiture of firearms.
      Count 4:
a.  Mandatory consecutive 5 years to life imprisonment;
b.  A fine not to exceed $250,000;
c.  A term of supervised release of 5 years, which would follow any term of imprisonment.  If the defendant violates the conditions of supervised release, he could be imprisoned for the entire term of supervised release;
d.  A mandatory special assessment of $100;
e.  Forfeiture of firearms;
      Count 7:
a.  Mandatory consecutive 25 years to life imprisonment;
b.  A fine not to exceed $250,000;
c.  A term of supervised release of 5 years, which would follow any term of imprisonment.  If the defendant violates the conditions of supervised release, he could be imprisoned for the entire term of supervised release;
d.  A mandatory special assessment of $100;
e.  Forfeiture of firearms.
  (Doc. 80 at 3-4).

currently under the influence of drugs, alcohol, or medication. (Id.).

Judge Granade explained to Campbell the rights he would be waiving by pleading guilty, and he confirmed he understood those rights. (Id. at 7). Among the rights explained, Judge Granade reviewed the right to trial by jury, the presumption of innocence, the Government's burden to prove guilt beyond a reasonable doubt, the right to present and cross-examine witnesses, and the right to remain silent. (Id.). Campbell also confirmed that no one had threatened, pressured, or promised him anything to plead guilty, nor had anyone promised that he would receive a specific sentence. (Id. at 6-7).

Judge Granade also discussed with Campbell the potential penalties he faced if he entered a guilty plea. (Id. at 7-8). Campbell acknowledged that he understood the potential penalties he faced, and further understood that the Court could reject the Government's sentencing recommendation and impose a more severe sentence than anticipated. (Id. at 6). Campbell also confirmed that he and his counsel had discussed the applicable sentencing guidelines and how they might affect his sentence, and that he understood the applicable guideline range would not be calculated until the probation office had prepared a presentence investigation report ("PSR"). (Id. at 9). He further acknowledged that the guideline range could be different than

the estimate initially given him by counsel, and that while the Court was required to consider the guidelines when determining a sentence, the guidelines are advisory and do not control the sentence to be imposed. (Id.).

Additionally, Judge Granade discussed with Campbell the appeal waiver contained in the plea agreement, and that Campbell was giving up his right to appeal his conviction and sentence except for the three limited circumstances contained in the plea agreement. (Id. at 10). Campbell confirmed that he understood the terms of the appeal waiver. (Id. at 11-12). Campbell was also advised of the elements the Government would have to prove in order to convict him, and he acknowledged signing the factual resume attached to his plea agreement, and agreed that the Government could prove the facts set forth in the factual resume. Campbell then pleaded guilty. (Id. at 11-13). The Court accepted the plea, and found that Campbell was "fully competent and capable of entering an informed plea", "aware of the nature of the charge and the consequences of the plea", and that the plea was "a knowing and voluntary plea supported by an independent basis in fact containing each of the essential elements of the offense." (Id. at 13).

Prior to sentencing, the Government made a motion for downward departure under 18 U.S.C. § 3553(e). (Doc. 154). Specifically, the Government recommended a departure from the

low end of the calculated guidelines range as to Count One, namely 80 months, based on useful information Campbell had provided. (Id.). Campbell's sentencing was held on November 14, 2013. (Doc. 172). In light of Campbell's cooperation, the Court granted Campbell a departure from the guideline range for Count one, and sentenced Campbell to fifty (50) months. (Doc. 155 at 2). Campbell was sentenced to a consecutive sixty (60) month sentence on Count Four, and three hundred (300) months on Count Seven, for a total sentence of four hundred and one (401) months' imprisonment. (Id.). Campbell did not file an appeal.[4]

Campbell filed a motion to extend the time to appeal, which the Court construed as a § 2255 federal habeas petition after providing proper notice to Campbell. (Docs. 160, 161). Subsequent thereto, Campbell filed the pending amended habeas petition and brief, and the Government filed a response in opposition. (Docs. 162, 164, 173).

## II.  DISCUSSION

The undersigned observes, as a preliminary matter, that Campbell's amended petition is not the model of clarity.  Based on a  liberal reading of Campbell's amended petition and brief,

---

[4] Subsequent to his sentencing, Campbell filed a Motion to Reduce Sentence re: 2014 Drug Guidelines Amendment. (Doc. 168). Judge Granade granted his motion, and reduced Campbell's term of imprisonment as to Count One from fifty (50) months to forty-one (41) months. (Doc. 177, 178). The order had no effect on the sentences imposed on Counts Four and Seven. (Doc. 177).

he appears to assert the following claims:

1) His guilty plea was not knowing and voluntary because of his low intellect and because he was not competent at the time of his guilty plea;

2) The District Court erred in failing to conduct a competency hearing on its own motion;

3) He is actually innocent of the gun offenses;

4) His trial counsel was ineffective because he did not seek a competency hearing before permitting Campbell to enter a guilty plea, he did not conduct a proper investigation of the fingerprints on the firearm, he did not file proper motions, and he did not explain to Campbell the consequences of his guilty plea. (Doc. 164-1 at 2, 5, 6-11).

"Relief under 28 U.S.C. §2255 is 'reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted). A § 2255 motion may not be a substitute for a direct appeal. Id. at 1232 (citing United States v. Frady, 456 U.S. 152, 165, 102 S. Ct. 1584, 1593, 71 L. Ed. 2d 816 (1982)). The "fundamental miscarriage of justice" exception recognized in Murray v. Carrier, 477 U.S. 478, 496, 106 S. Ct. 2639, 91 L. Ed. 2d 397

(1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent . . . " Murray, 477 U.S. at 496.

### A. Campbell's Guilty Plea Was Knowing and Voluntary.

Once a guilty plea becomes final, unless the record demonstrates the sentencing court lacked the power to enter the conviction or impose the sentence, a petitioner may only challenge the knowing, voluntary nature of the plea. United States v. Broce, 488 U.S. 563, 569, 109 S. Ct. 757, 102 L. Ed. 2d 927 (1989). In conducting its analysis, the Court starts with the proposition that a trial court may not accept a guilty plea without an affirmative showing on the record that the plea was intelligent and voluntary. Boykin v. Alabama, 395 U.S. 238, 242-43, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969). For a guilty plea to be made knowingly and voluntarily, the court accepting the guilty plea must "specifically address three 'core principles,' ensuring that a defendant (1) enters his guilty plea free from coercion, (2) understands the nature of the charges, and (3) understands the consequences of his plea."[5] United States v. Moriarty, 429 F.3d 1012, 1019 (11th Cir. 2005) (per curiam) (citations omitted). In addition, "a defendant who seeks

---

[5] Under the Federal Rules of Criminal Procedure, a plea of guilty will be deemed voluntary, if before a guilty plea is accepted, the "court . . . address[es] the defendant personally in open court" and "determine[s] that the plea is voluntary and did not result from force, threats, or promises (other than promises in the plea agreement)." Fed. R. Crim. P. 11(b)(2).

reversal of his conviction after a guilty plea . . . must show a reasonable probability that, but for the error [under Rule 11 of the court accepting the guilty plea], he would not have entered the plea." Id. at 1020 (quoting United States v. Dominguez Benitez, 542 U.S. 74, 83, 124 S. Ct. 2333, 159 L. Ed. 2d 157 (2004)).

There is a strong presumption that statements made during the plea colloquy are true. United States v. Medlock, 12 F.3d 185, 187 (11th Cir. 1994). The defendant bears a "heavy burden" to show that his statements under oath were false. United States v. Rogers, 848 F.2d 166, 168 (11th Cir. 1988). The representations of a defendant as well as any findings by a judge accepting a plea constitute a formidable barrier in any subsequent collateral proceeding. Thompson v. Wainwright, 787 F.2d 1447, 1460 (11th Cir. 1986).

As noted *supra*, Campbell claims that because of his limited eighth grade education, reading difficulties, and low intelligence, he was not competent to enter the guilty plea; thus, his plea was not knowing and voluntary. However, the transcript from the guilty plea hearing belies Campbell's claim. (Doc. 171). At the guilty plea hearing, Campbell denied that he had received any recent mental health treatment, and further denied that he was under the influence of any medication, alcohol, or drugs. He testified, without hesitation, that he had

received a copy of the charges against him, that he had discussed them with his attorney, that he understood the charges, and that he was fully satisfied with the representation and advice he had received from his counsel. The hearing transcript further reflects that Judge Granade informed Campbell of the charges to which he was pleading guilty, as well as the penalties that might be imposed in the event of his conviction.

Upon questioning from the Court, Campbell advised that he had completed the eighth grade, and that because he had difficulty reading, his attorney had read the plea agreement and factual resume to him. Campbell testified that he understood the charges to which he was pleading and the penalties that could be imposed if he was convicted, and he acknowledged that the Government could prove the facts set forth in the factual resume to support his conviction.

The hearing transcript also reflects that Judge Granade provided Campbell a detailed explanation of the rights he would forfeit by pleading guilty, and he confirmed that he understood his decision to plead guilty would result in a waiver of these rights. Campbell also testified that no one had made him any promises other than those contained in the plea agreement, and his decision to plead guilty was not the result of force, threats, or pressure, but that he was pleading guilty of his own free will because he was guilty.

Based on the thorough plea colloquy, during which Judge Granade was able to make firsthand observations of Campbell's responses, demeanor and behavior, she concluded that he was fully competent and capable of entering an informed plea, that he was aware of the nature of the charges and the consequences of the plea and that his plea of guilty was a knowing and voluntary plea supported by an independent basis in fact containing each of the essential elements of the offenses. (Doc. 171 at 13). Accordingly, Campbell's plea was accepted and he was adjudged guilty of Counts 1, 4 and 7.

Against this backdrop, Campbell has proffered nothing aside from his conclusory assertions in support of his claim that he was not competent and, therefore, his guilty plea was not knowing and voluntary. Independent review of the thorough Rule 11 plea colloquy confirms that Campbell's guilty plea was free from coercion, and that he understood the nature of the charges, and the consequences of his plea. See United States v. Stitzer, 785 F.2d 1506, 1514 n.4 (11th Cir. 1986) (noting that "if the Rule 11 plea-taking procedure is careful and detailed, the defendant will not later be heard to contend that he swore falsely."). Simply put, the record is devoid of any evidence that suggests that any condition, mental or otherwise, impaired Campbell's ability to participate in the guilty plea hearing. Accordingly, this claim is without merit.

**B. No Competency Evaluation Was Required.**

Also without merit is Campbell's assertion that the Court erred in failing to order a competency examination before proceeding with the guilty plea hearing. The law is clear that it is a fundamental requirement of Due Process that defendants be mentally competent upon entering a guilty plea or proceeding to trial.

> At any time after the commencement of a prosecution for an offense and prior to the sentencing of the defendant . . . the court . . . shall order such a hearing on its own motion, if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense.

18 U.S.C.A. § 4241(a). "Incompetency means 'suffering from a mental disease or defect rendering [a defendant] mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense.'" Battle v. United States, 419 F.3d 1292, 1298 (11th Cir. 2005) (quoting 18 U.S.C. § 4241(a)).

To show entitlement to an evidentiary hearing on a competency claim, a petitioner must present "clear and convincing evidence creating a real, substantial and legitimate doubt as to his competence to stand trial." Johnson v. Singletary, 162 F.3d 630, 637 (11th Cir. 1998) (citation

omitted). "This standard of proof is high; and 'the facts must positively, unequivocally, and clearly generate the legitimate doubt.'" <u>Battle</u>, 419 F.3d at 1299 (citation omitted); <u>see also</u> <u>United States v. Morris</u>, 329 F. App'x 948, 951 (11th Cir. 2010) (noting that a district court is obligated to conduct a competency hearing only when there is "a *bona fide* doubt about the defendant's competence.") (citing <u>United States v. Rahim</u>, 431 F.3d 753, 759 (11th Cir. 2005)).[6]

Not every manifestation of mental illness demonstrates incompetence to stand trial. <u>Battle</u>, 419 F.3d at 1299 (citing <u>Medina v. Singletary</u>, 59 F.3d 1095, 1106 (11th Cir. 2005)). For competency to be an issue, the evidence must indicate a *present* inability to assist counsel or understand the charges. <u>Id.</u> (citing <u>Medina</u>, 59 F.3d at 1107). Neither low intelligence, mental deficiency, or bizarre, volatile, and irrational behavior can be equated with mental incompetence to stand trial. <u>Id.</u>

Nothing before the Court supports Campbell's claim of incompetence. First, he has not pointed to any medical records which contain a medical diagnosis or any treatment for a mental illness. In fact, the record is devoid of any evidence that Campbell has ever been treated for mental illness. (Doc. 112 at 68-69). Additionally, there is nothing in the guilty plea

---

[6] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2 (2005).

transcript which suggests that Campbell did not have "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" or that he did not have a "rational as well as factual understanding of the proceedings against him." See Dusky v. United States, 362 U.S. 402, 80 S. Ct. 788, 4 L. Ed. 2d 824 (1960). Indeed, at the guilty plea hearing, Campbell did not behave erratically, but instead fielded questions from the Court and provided appropriate responses. During the few instances in which Campbell did not understand a question, he sought clarification, and then provided an appropriate response. In light of this unrefuted evidence, the Court was under no obligation to order a competency examination. Therefore, the undersigned finds that this claim lacks merit.

**C. Campbell's Ineffective Assistance Claims Lack Merit.**

As noted *supra*, Campbell contends that his attorney was ineffective for the following reasons: (1) misadvising or deceiving Campbell regarding the consequences of the plea agreement (Doc. 164, at 6, 9); (2) failing to request a competency hearing (Doc. 162-1 at 11); (3) failing to investigate matters in his case and order fingerprint testing; and (4) failing to file "normal motion papers." (Docs. 162, 164). "Ineffective assistance of counsel claims are governed by the standard contained in the Supreme Court decision in

14

Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)." Green v. Nelson, 595 F.3d 1245, 1249 (11th Cir. 2010). "An ineffective assistance claim has two components: A petitioner must show that counsel's performance was deficient, and that the deficiency prejudiced the defense." Wiggins v. Smith, 593 U.S. 510, 521, 123 S. Ct. 2527, 156 L. Ed. 2d 471 (2003) (citing Strickland, 466 U.S. at 687).  To establish deficiency, a petitioner must show that "counsel's representation 'fell below an objective standard of reasonableness.'" Wiggins, 539 U.S. at 521 (quoting Strickland, 466 U.S. at 688).  To demonstrate ineffective assistance of counsel, Campbell must show that his attorney's performance was deficient and that his case was prejudiced as a result.

The two-part Strickland standard applies to challenges to the validity of guilty pleas based on claims of ineffective assistance of counsel.  See Hill v. Lockhart, 474 U.S. 52, 58, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985).  Because the failure to demonstrate either deficient performance or prejudice is dispositive of the claim, courts applying the Strickland test "are free to dispose of ineffectiveness claims on either of [Strickland's] two grounds." Oats v. Singletary, 141 F.3d 1018, 1023 (11th Cir. 1998). "[U]nder the exacting rules and presumptions set forth in Strickland, 'the cases in which habeas petitioners can properly prevail on the ground of ineffective

assistance of counsel are few and far between.'" <u>Windom</u>, 578 F.3d at 1248 (citations omitted).  Based upon a careful review of Campbell's petition and the record evidence, the undersigned finds that Campbell has failed to demonstrate that his counsel provided ineffective representation.

Each of Campbell's claims against his attorney will be discussed below, in the context of the <u>Strickland</u> standard and other relevant precedent.

> **i.  Campbell's claim that his Counsel misadvised or deceived him regarding the consequences of the plea agreement is without merit.**

In <u>Lockhart</u>, the Court held that that in applying the <u>Strickland</u> standard to guilty pleas, the first <u>Strickland</u> prong is "nothing more than a restatement of the standard of attorney competence already set forth in <u>Tollett v. Henderson</u> . . . and <u>McMann v. Richardson</u>." <u>Lockhart</u>, 477 U.S. at 57, 58-59. When a petitioner's conviction is based on a guilty plea, in order to show prejudice, he must show that there is a reasonable probability that, but for counsel's mistakes, he would have not have pleaded guilty and would have insisted on going to trial. <u>Hill</u>, 474 U.S. at 59; <u>Eslinger v. Davis</u>, 44 F.3d 1515, 1529 (11th Cir. 1995). When a petitioner claims ineffective assistance of counsel rendered his guilty plea involuntary and the petitioner was represented by counsel during the plea process and entered his plea upon the advice of counsel, the

voluntariness of the plea depends on whether counsel's advice "was within the range of competence demanded of attorneys in criminal cases." McMann v. Richardson, 397 U.S. 759, 771, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970).

As noted *supra,* "there is 'a strong presumption' that statements made by a defendant during his plea colloquy are true." Cardenas, 230 Fed. App'x at 935. At Campbell's guilty plea hearing, he testified under oath that he was fully satisfied with his attorney's representation, and that his attorney had fully explained to him the contents of the plea agreement. (Doc. 171 at 3-4). Campbell's own statements at the plea hearing belie his claim that his counsel's representation was outside the range of reasonable competence. Indeed, while Campbell contends that he was deceived by his counsel, he has not pointed to any erroneous assertions made by his counsel.[7]

Assuming, *arguendo*, that Campbell could show that his attorney's performance was deficient in advising him to plead guilty, he is unable to demonstrate that he suffered prejudice because of it. Campbell's signed plea agreement set out the counts to which Campbell was to plead, and the potential penalties he faced if he were convicted. (Doc. 80). During the plea colloquy, Judge Granade advised Campbell of the potential

---

[7] Campbell confusingly argues on the one hand that he expected his sentence to be 510 months, and on the other hand, asserts that he was surprised by a sentence of "410 months". (Doc. 164-1 at 6).

penalties that he faced, that the advisory guidelines might differ from any estimate he may have been provided, and that while she had to consider the guidelines, she could deviate from the guidelines. (Doc. 171).

Upon questioning, Campbell confirmed that he was aware of the contents of the plea agreement and factual resume, that he was fully aware of the potential sentence he faced, that he understood the actual sentence imposed could be greater than any estimates he had received, and that he was entering the guilty plea of his own volition. (Doc. 171 at 3-7). He also confirmed that no one had promised him anything outside of the written plea agreement. In light of the thorough Rule 11 colloquy, Campbell cannot demonstrate that he was somehow prejudiced by his counsel's alleged deficient performance. Nor can Campbell establish that he would have insisted on going to trial if not for the deficient advice of his counsel.

The record reflects that as a result of his plea agreement, and extensive cooperation, the Government filed a motion seeking to have Campbell sentenced below the guideline range for the drug conspiracy charge in count one, namely from 120 months to 81 months. (Doc. 154). As noted *supra*, Campbell was sentenced to 50 months on Count One. (Doc. 155). Given this substantial reduction, the undersigned finds that under the circumstances, Campbell cannot establish that he was prejudiced, and that he

would have insisted on going to trial but for the alleged deficient advice of counsel. Accordingly, Campbell's claim is without merit.

> ### ii. Campbell's claim regarding a competency hearing lacks merit.

Campbell asserts that his counsel was ineffective because he failed to request a competency hearing when "Petitioner exhibited behavior that suggested he was incompetent, but also when the district judge mentioned the question to Petitioner's mental state". (Doc. 162-1 at 10-11). He claims that his counsel should have been aware of a potential issue with his competency based on statements from the Court, and as a result of his own dealings with Campbell. (Doc. 162-1 at 10).

According to Campbell, his counsel's failure to file a motion for a competency hearing prejudiced him and subjected him to a four hundred and ten (410) month term of imprisonment. (Doc. 162-1 at 14). He also argues that if he had understood the charges or offenses against him, he would have proceeded to trial. (Doc. 162-1 at 13). As discussed *supra*, Campbell has failed to establish any basis for a competency hearing. Aside from his conclusory allegations, the record is devoid of any facts that suggest that Campbell was unable to understand the nature and consequences of the proceedings against him, or to properly assist in his defense. Thus, this claim is meritless.

### iii. Campbell's claim regarding failure to investigate lacks merit.

Campbell further asserts that his attorney failed to "investigate matters in petitioner [sic] case." (Doc. 164 at 8). According to Campbell, his attorney should have investigated the fingerprints on the firearms because it would have shown that he did not possess the firearms. (Doc. 162-1 at 5). As noted *supra,* "there is a 'strong presumption' that statements made by a defendant during his plea colloquy are true." Cardenas, 230 F. App'x at 935.  In this case, Campbell signed the plea agreement and factual resume and at the guilty plea hearing he testified that the Government could prove the facts contained in the factual resume. (Docs. 80, 81, 171). The factual resume reflects that a search warrant was executed in February 2011 at the residence where Campbell was residing. (Doc. 81). Upon entering the residence, Campbell's cousin was found sleeping on a couch, and a  Glock .40 caliber firearm was located on the floor near the couch.  Campbell was located in his bedroom, and during a search of the room, officers located ammunition for the .40 caliber firearm and a thirty (30) round magazine, along with bags of cocaine and $1,855 in cash in a drawer in the room. Cocaine residue and a digital scale were also located in the kitchen.  Campbell, who had $620 cash in his wallet, told officers, "You got me dead to right[,]" and admitted that the

drugs belonged to him, that he sold drugs, and that his cousin, who claimed ownership of the firearm, was his protection because of what he does.(Id.).

The factual resume further reflects that a second search warrant was executed at a different location in August 2011 after a confidential informant made a controlled purchase of crack cocaine from Campbell seventy-two (72) hours earlier. (Id.). Several individuals, including Campbell, his girlfriend, and two of his co-defendants were at the residence at the time of the search.  Campbell was located in bed with his girlfriend, and a search of their room uncovered two large cookies of crack cocaine in a box under the bed, three baggies containing crack cocaine rocks, and a .44 caliber Magnum revolver and six live rounds of ammunition under the mattress, along with $1,907. Digital scales and two crack cocaine cookies were also located in the kitchen. Campbell admitted that the residence belonged to his girlfriend and that he had been living there. Campbell also had clothes and other items at the residence. (Id.).

While Campbell contends that his attorney was deficient because he did not order testing for fingerprints on the firearms, the above-referenced facts, which were set forth in the factual resume, and which Campbell acknowledged the Government could prove, were sufficient to convict Campbell of two counts of possessing a firearm in furtherance of and in

connection with a drug trafficking felony.  See United States v. Aguilar, 519 F. App'x 541, 547 (llth Cir. 2013) (upholding a conviction for possession of a firearm in furtherance of a drug trafficking crime upheld where firearms were found in proximity to cocaine and various other drug paraphernalia); United States v. Martin, 490 F. App'x 255, 259 (llth Cir. 2012) (upholding conviction for possession of a firearm in furtherance of a drug trafficking crime where a Glock .40 firearm was found under a couch near a coffee table holding a scale with a small amount of cocaine and other drugs were recovered from the house); United States v. Harden, 351 F. App'x 393 (llth Cir. 2009)(upholding conviction for possession of firearm in furtherance of a drug trafficking crime where pistol was found next to defendant on the floor of his bedroom in proximity to cash, a pill bottle containing crack cocaine and a digital scale).  Accordingly, assuming, _arguendo_, that Campbell's counsel was deficient for not ordering testing for fingerprints, Campbell cannot establish prejudice given his factual resume, and his sworn testimony at the guilty plea hearing that the Government could prove the facts in the factual resume, and that he was pleading guilty to the charges of his own volition because he was guilty.  Thus, this claim lacks merit.[8]

---

[8] Campbell also asserts that his counsel failed to file "normal" paper motions; however, he has offered no facts to develop this argument.  Thus, it is due to be dismissed.  Campbell also indicated that his counsel failed to

### iv.  Campbell's actual innocence claim lacks merit.

Campbell's claim of actual innocence likewise lacks merit. Campbell claims that there is a lack of factual basis for his plea to Counts 4, and 7, possessing, carrying, using a firearm in furtherance of a drug trafficking crime. (Doc. 162-1 at 2). According to Campbell, the Government did not have enough evidence to meet the "use" prong of the statute under Bailey v. U.S., 516 U.S. 137, 116 S. Ct. 501, 133 L. Ed. 2d 472 (1995). (Doc. 162-1 at 2). Campbell claims that he did not possess the firearm on the dates that the alleged offenses occurred, and that the firearms found in the residence were found in a different location from him; thus, he did not have immediate possession or control, and proximity is insufficient to show constructive possession under U.S. v. Arnola, 486 F.3d 177 (6th Cir. 2007), and U.S. v. Brimley, 529 F.3d 103 (6th Cir. 1976). Campbell further claims there is evidence that he was just visiting the residences, and that a co-defendant in this case was actually in possession of the firearm at the time of the offense.

To successfully make a claim of actual innocence, Campbell must (1) present new reliable evidence that was never previously presented, and (2) show "that it is more likely than not that no

---

file an appeal; however, he offered no facts to support this contention, and he abandoned this argument when he elected to have his motion to file an out of time appeal treated as a federal habeas petition instead.

reasonable juror would have found petitioner guilty beyond a reasonable doubt" in light of new evidence. Johnson v. Fla. Dept. of Corr., 513 F.3d 1328, 1334 (11th Cir. 2008)(citations omitted). "[A]ctual innocence means factual innocence, not mere legal insufficiency." See Bousley v. United States, 523 U.S. 614, 623 (1998).

Aside from his conclusory assertions, Campbell has presented no new evidence. He simply argues that there was insufficient evidence based on an existing record to prove that he "used" or "carried" or "possessed" the subject firearms. However, as noted *supra*, the Court advised Campbell of the elements the Government was required to prove during the plea colloquy, and Campbell testified, under oath, that he understood the elements, that he agreed that the Government could prove the facts set forth in the factual resume, and that he was pleading guilty of his own violation because he was guilty. Because Campbell's conclusory actual innocence claim is belied by the Rule 11 plea colloquy, and his factual resume, his claim lacks merit.

### III. <u>CERTIFICATE OF APPEALABILITY</u>

Pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings, the undersigned recommends that a certificate of appealability in this case be **DENIED**. 28 U.S.C. § 2255, Rule 11(a) ("The district court must issue or deny a certificate of

appealability when it enters a final order adverse to the applicant."). The habeas corpus statute makes clear that an applicant is entitled to appeal a district court's denial of his habeas corpus petition only where a circuit justice or judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1). A certificate of appealability may be issued only where "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

Where a habeas petition is being denied, in part, on procedural grounds without reaching the merits of an underlying constitutional claim, "a COA should be issued [only] when the prisoner shows... that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484, 120 S. Ct. 1595, 1064, 146 L. Ed. 2d 542 (2000). Where a habeas petition is being denied on the merits of an underlying constitutional claim, a certificate of appealability should be issued only when the petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Id. ("To obtain a COA under § 2253(c), a habeas prisoner must make a substantial showing of the denial of a constitutional right, a demonstration

that, under <u>Barefood v. Estelle</u>, 463 U.S. 880, 893, 103 S. Ct. 3383, 3394, 77 L. Ed. 2d 1090 (1983)), includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.")(internal quotation marks omitted); <u>accord</u> <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 336, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003).

Campbell's petition does not warrant the issuance of a Certificate of Appealability. Reasonable jurists could not debate whether Campbell's claims should be resolved in a different manner or deserves to proceed further. The recommendation that Campbell's claim be denied is based on the straightforward application of clear Circuit precedent, and no reasonable jurist cold differ on the appropriate disposition of his claims on the record presented. As a result, Campbell is not entitled to a certificate of appealability, and consequently, he should not be permitted to proceed *in forma pauperis* on appeal.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, it is recommended that Petitioner's § 2255 Motion to Vacate, Set Aside, or Correct Sentence (Doc. 164) be **DENIED**, that this action be dismissed, and that judgment be entered in favor of Respondent, the United States of America, and against Petitioner, Jakeith Terell Campbell. The

undersigned Magistrate Judge further opines that Campbell is not entitled to issuance of a Certificate of Appealability.

## Notice of Right to File Objections

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. ALA. L.R. 72(c)(2). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this **12th** day of **September, 2018.**

**/s/ SONJA F. BIVINS**
**UNITED STATES MAGISTRATE JUDGE**

27